IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TONIA DIXON,        Plaintiff,    v.    NEW CASTLE COUNTY,        Defendant. | )  )  )  )  )  )  )  )  )  )  )  )  )   C.A. No. _____    JURY TRIAL DEMANDED |

# COMPLAINT

## INTRODUCTION

1. Plaintiff, Tonia Dixon ("Plaintiff"), files this action against Defendant New Castle County, New Castle County Police Department ("Defendant NCC" or "NCC"), for back pay, front pay, compensatory damages, punitive damages, and attorneys' fees for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, the Delaware Persons with Disabilities in Employment Protections Act and breach of the covenant of good faith and fair dealing.

## NATURE OF THE ACTION

2. Defendant NCC employed Plaintiff for over twenty years.

3. Defendant engaged in disability discrimination and wrongfully discriminated against Plaintiff by virtue of her disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, and the Delaware Persons with Disabilities Employment Protections Act, 19 Del. C. §720, *et seq*.

4. Defendant breached the implied covenant of good faith and fair dealing which, under Delaware law, inheres in every contract.

## JURISDICTION

5. This Court has federal question jurisdiction over this cause of action pursuant to 42 U.S.C. § 1983.

6. This Court has supplemental jurisdiction over all state causes of action pursuant to 28 U.S.C. §1367.

7. Venue is proper in this district pursuant to 29 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

## PARTIES

8. Plaintiff is a resident of New Castle County, Delaware, who at all times relevant to this Complaint was an employee of Defendant NCC.

9. Defendant New Castle County ("Defendant NCC") is located at the New Castle County Government Center, 87 Read's Way, New Castle, Delaware, 19720, and is subject to service of process at that same address.

## ADMINISTRATIVE PROCESS

10. On October 4, 2018, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination against Defendant New Castle County.

11. On September 25, 2019, Plaintiff received a "Dismissal and Notice of Rights" from the EEOC, hereto attached as *Exhibit A*.

12. Plaintiff has filed this action under the Americans with Disabilities Act and Delaware Persons with Disabilities Employment Protections Act within ninety (90) days after receipt of her Right to Sue Notice from the EEOC.

13. Plaintiff has satisfied all statutory prerequisites for filing this action.

## FACTS

14. Plaintiff began her employment with Defendant NCC in 1997 in the position of Public Safety Operator in the Emergency Communications Division of the Department of Public Safety.

15. In July of 2015, Plaintiff was diagnosed with Multiple Sclerosis.

16. On March 7, 2017, Plaintiff suffered from a relapse as a result of her Multiple Sclerosis. Due to the relapse, Plaintiff became legally blind in her right eye.

17. On March 8, 2017, Plaintiff took medical leave to tend to her disability.

18. As a result of her disability, Plaintiff was unable to return to work in the Public Safety Operator position, also known as a 911 Operator. The Public Safety Operator position requires an employee to work a twelve-hour shift and to operate a computer aided dispatch system. The computer aided dispatch system requires an individual to work on five monitors and two key boards. Due to her disability, Plaintiff was not able to work a twelve-hour shift or work on five monitors and two key boards.

19. On December 5, 2017, Plaintiff provided Defendant with a doctor's note from her neurologist clearing her to return to work in a different position that could accommodate her visual defects. In response to Plaintiff's accommodation request, Elizabeth Petrick in Human Resources advised Plaintiff there was a Radio Communicator position available within the Sewer Department.

20. Ms. Petrick gave Plaintiff a copy of the Radio Communicator Job Description to provide to her physician. Plaintiff's physician concluded Plaintiff could perform all of the duties of the Radio Communicator.

21. Plaintiff interviewed for the position of Radio Communicator.

22. During the interview, Plaintiff was told her duties would consist of working the front desk, and greeting individuals who came to the Department.

23. The hours for the Radio Communicator position were Monday through Friday, 7:00p.m. to 3:00p.m.

24. On December 29, 2017, Plaintiff was cleared to return to work in the position of Radio Communicator with an accommodation of five hours a day, five days a week. Plaintiff provided her return to work with accommodations notification to Defendant.

25. Defendant failed to respond to Plaintiff's request to return to work. On January 11, 2018, Plaintiff provided Defendant with another doctor's note from her neurologist stating she could return to work as a Radio Communicator for five hours per day, five days per week during day time hours.

26. Defendant scheduled Plaintiff for a return to work examination with Omega Medical Center on January 11, 2018.

27. Stephanie Tickle, NCC Risk Manager, provided Omega with a copy of the Radio Communicator job description.

28. On January 16, 2018, Dr. Janicia Thomas, examined Plaintiff at Omega Medical Center.

29. During the examination, Dr. Thomas did not evaluate or perform any tests on Plaintiff that would allow her to determine if Plaintiff could perform the job duties of the Radio Communicator position, in accordance with the Radio Communicator job description. Dr. Thomas did not review the job duties as laid out in the Radio Communicator job description with Plaintiff.

30. After the January 16, 2018, evaluation, Plaintiff contacted Defendant on multiple occasions requesting the status of her medical evaluation at Omega. Ms. Tickle told Plaintiff to

call Dr. Thomas for the results despite the fact on January 22, 2018, Dr. Thomas provided Ms. Tickle the results of Plaintiff's evaluation.

31. Dr. Thomas advised Ms. Tickle Plaintiff did not meet the physical requirements of the Radio Communicator position, despite not performing any tests related to the physical requirements of the Radio Communicator position. Dr. Thomas recommended following restrictions for Plaintiff's return to work: (1) shall not work more than 5 hours a day (2) shall only work during daylight (3) no commercial driving; and (4) no tasks shall be assigned that require immediate response.

32. The restrictions set forth by Dr. Thomas were able to be accommodated through the Radio Communicator position.

33. Defendant failed to place Plaintiff in the Radio Communicator position and denied her accommodation request without engaging in the interactive process.

34. Defendant failed to articulate an undue hardship which it would have suffered by placing Defendant in the Radio Communicator position with accommodations.

35. On or around April 2, 2018, Defendant placed Plaintiff in the position of Public Safety Officer, despite she was not cleared to return to the position.

36. Plaintiff was placed in the Public Safety Officer working five hours per day answering non-emergency and emergency calls, despite the fact Plaintiff could not perform this position due to her disability and was not cleared to return to this position.

37. In order to keep her job, Plaintiff was forced to work in the Public Safety Officer position from April 2, 2018 until July 13, 2018.

38. On June 5, 2018, Plaintiff was told by Ms. Petrick that she was going to be terminated. When Plaintiff asked for more details, Ms. Petrick advised Plaintiff to keep working until she receives a termination letter in the mail.

39. Plaintiff then asked Ms. Petrick, as a reasonable accommodation, to be placed within a Library position within NCC. Ms. Petrick stated NCC did not have any library positions available. However, Plaintiff had a copy of a posting Defendant had released for a library position.

40. Plaintiff continued to work in the position of Public Safety Officer until September 27, 2019.

41. On September 27, 2019, Plaintiff received a letter from Chief Human Resources Officer, Deloris Arrington, advising her she was being terminated for inability to perform the duties of the Public Safety Operator position. Plaintiff requested a pre-termination hearing.

42. On November 14, 2018, a pre-termination hearing was held. After the hearing, Ms. Arrington chose not to terminate Plaintiff and instructed additional measures be taken to place Plaintiff into a vacant position.

43. Defendant failed to accommodate Plaintiff and place her in a in a vacant position which could accommodate her disability.

44. On April 9, 2019, Plaintiff received notification from Defendant recommending she be terminated.

45. On August 26, 2019, Plaintiff was terminated.

46. As a result of Defendant's actions, Plaintiff has suffered physical, emotional and economic damage as a result of the aforementioned conduct which exposes Defendant to liability under the ADA and Title VII.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendant:

### COUNT I
### Discrimination in Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*

47. The allegations of Paragraphs 1 through 46 are incorporated by reference as if fully restated herein.

48. Defendant employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 12111(3).

49. At all times relevant hereto, Plaintiff was employed by Defendant and is an "Employee" as defined by 42 U.S.C. § 12111(4).

50. Plaintiff received a Right to Sue letter from the EEOC on September 25, 2019. Plaintiff has satisfied all statutory prerequisites for filing this action.

51. Defendant was required to determine Plaintiff's rights when she requested time off for her recommended treatment and to tend to her disability, as well as when Plaintiff provided Defendant with doctor's note in December 2017 requesting accommodations.

52. Defendant was further required to initiate an informal, interactive process with her "[to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

53. Instead of working with Plaintiff, Defendant punished her for her disability.

54. Plaintiff has Multiple Sclerosis and Optic Neuritis, which is a disability that substantially limits a major life activity.

4

55. Plaintiff is a "qualified individual" who could perform the essential functions of the Radio Communicator position in New Castle County, provided she was given the reasonable accommodation she sought.

56. Plaintiff submitted the appropriate doctor's notes and documentation to support her requests for accommodation, however, Defendant failed to engage in the interactive process and denied her the requested accommodation in violation of the American with Disabilities Act as Amended.

57. Providing the accommodation to Plaintiff was reasonable, as Plaintiff was able to return to work and perform the essential functions of the Radio Communicator position.

58. Instead, Defendant placed Plaintiff back in the Public Safety Officer position, a position Plaintiff could not perform due to her disability.

59. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, as well as punitive damages and attorneys' fees.

**COUNT II**
**Discrimination in Violation of the Delaware Persons with Disabilities Employment Protection Act, 19 *Del. C*. § 720 et seq.**

60. The allegations of Paragraphs 1 through 59 are incorporated by reference as if fully reinstated herein.

61. Defendant employs four or more employees and is an "Employer" as defined by 19 *Del. C*. § 710(7.)

62. At all times relevant hereto, Plaintiff was employed by Defendant and is an "Employee" as defined by 19 *Del. C*. § 710(6).

4

63. It shall be an unlawful employment practice for an employer because of a disability to "discharge or otherwise discriminate against qualified persons with disabilities with respect to compensation, terms, conditions or privileges of employment." 19 *Del. C*. §724(a)(2).

64. Plaintiff suffers from multiple sclerosis and optic neuritis, both physical and mental impairments that substantially limits one or more major life activities. 19 *Del. C*. § 722(4)(a).

65. Plaintiff is qualified to perform the essential functions of a Radio Communicator.

66. Plaintiff suffered an adverse employment action as a result of Defendant's disability discrimination, when she was terminated on August 26, 2019.

67. Defendant was required to determine Plaintiff's rights when she presented Defendant with multiple doctor's notes listing restrictions and associated accommodations.

68. Defendant was also required to determine Plaintiff's right when she requested an accommodation of being placed in the vacant Radio Communicator position.

69. Defendant was required to initiate an interactive process with Plaintiff to identify the limitations resulting from her disability and potential reasonable accommodations that could overcome those limitations. 19 *Del. C*. § 723(a-b).

70. Instead of working with her, Defendant required Plaintiff to return to work in the position of Public Safety Officer, a position she could not physically perform due to her disability.

71. Defendant refused to engage in the interactive process, ignoring Plaintiff's request for a reasonable accommodation.

72. Providing the accommodation of placement into the Radio Communicator position was reasonable, as the position was open, and Plaintiff would have been able to return to work in that position.

73. Defendant ultimately terminated Plaintiff in violation of 19 *Del. C*. § 724.

74. Defendant has not stated an undue hardship it would have suffered by allowing Plaintiff to perform the Radio Communicator position.

75. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including, emotional distress, past and future lost wages and benefits, as well as punitive damages and attorney's fees.

## COUNT III
### Breach of the Implied Covenant of Good Faith and Fair Dealing

76. The allegations of Paragraphs 1 through 75 are incorporated by reference as if fully restated herein.

77. Every contract, whether oral or written, express or implied, has a covenant to the effect that neither party to the contract will do anything in bad faith to prevent the other party to the contract from enjoying the benefits of the contract. This is known as the implied covenant of good faith and fair dealing, and this covenant applies to the employment agreement between Plaintiff and Defendant.

78. Defendant breached this covenant by intentionally discriminating against Plaintiff because of her disability and by failing to engage in the interactive process to find a position for Plaintiff which could accommodate her disability.

79. Defendant's breach of the implied covenant of good faith and fair dealing has damaged Plaintiff, financially and professionally.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

A. Declare the conduct by Defendant to be in violation of Plaintiff's statutory

rights and common law rights.

  B. Awarding Plaintiff any and all consequential damages, including, but not limited to lost wages, salary, employment benefits, back pay, front pay, pre and post judgement interest, equity, liquidated damages, and any or all pecuniary damages.

  C. Awarding Plaintiff all compensation due as a result of Defendant's violations herein.

  D. Awarding Plaintiff an equal and additional amount as liquidated damages.

  E. Awarding Plaintiff costs and reasonable attorney's fees.

  F. Awarding Plaintiff pre and post judgment interest at the legal rate.

  G. Any and all such other relief as the Court deems appropriate under the circumstances.

            **ALLEN & ASSOCIATES**
            */s/ Michele D. Allen*
            Michele D. Allen (#4359)
            4250 Lancaster Pike Suite 250
            Wilmington, DE 19805
            302-234-8600
            302-234-8602 (fax)
            michele@allenlaborlaw.com
            *Attorney for Plaintiff*

Dated: December 23, 2019